SO ORDERED: July 26, 2011.



_____
Anthony J. Metz III
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| MARY LEE COLE ) | CASE NO. 11-5171-AJM-7A |
| ) | |
| Debtor ) | |

### ORDER OVERRULING TRUSTEE'S OBJECTION
### TO DEBTOR'S CLAIM OF EXEMPTIONS

This matter came before the Court for hearing on July 19, 2011 upon the Trustee's objection to the Debtor's claim of exemptions. Present at the hearing were the Debtor in person and by counsel, Amanda Quick, as well as the Trustee, Paul Gresk. For the reasons stated below, the Trustee's objection is overruled.

*Background*

The Debtor lived in Georgia from 2006 until October, 2010, when she moved to Indiana. She filed her chapter 7 case on April 26, 2011 (the "Petition Date") in Indiana,

1

and claimed an exemption under §522(d)(1) [1] of $21,625 in her residence located at 5948 Northland Road, Indianapolis, Indiana (the "Residence"). The Trustee objected, arguing that the Debtor was entitled only to a $10,000 homestead exemption under the Georgia exemption statute, O.C.G.A. §44-13-100(a)(1).

## *Discussion*

### *§522(b) and the BAPCPA amendments*

Section 522(b) of the Bankruptcy Code allows individual debtors to exempt property from "property of the estate", using either federal exemptions under §522(d) or applicable state exemptions. Section 522(b)(2) allows states to "opt out" of the federal scheme. Prior to BAPCPA [2], former §522(b)(2)(A) was the "choice of law" rule which provided that the debtor use the exemptions of the state where the debtor had been domiciled for the 180 day period immediately preceding the bankruptcy filing. Since the debtor's domicile for the 180-day period preceding the filing also determined the proper venue in where to file the bankruptcy case [3], the usual result was that the debtor's exemptions were those of the state in which the bankruptcy case was filed.

BAPCPA dramatically altered this "choice of law" rule for exemptions by extending the 180-day period (6 months) to 730 days (2 years). If the debtor had been domiciled in more than one state during that 730-day period (the "lookback period"), it is the debtor's domicile during the *180- day period prior to the lookback period* that

---

[1] Sections references are to the Bankruptcy Code, Title 11, unless otherwise indicated

[2] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, effective October 17, 2005 for most sections.

[3] 28 U.S.C. §1408

2

governs the choice of law for exemptions. Indeed, the BAPCPA amendment was geared to closing the "mansion loopholes" in order to prevent a debtor from moving to another state with more favorable exemptions and then filing bankruptcy in that state, possibly as soon as 91 days later (as the venue requirements allow the debtor to file in the state in which he lived for the larger of the 180 day period). *In re Beckwith*, 448 B.R. 757, 761 (Bankr. S. D. Ohio 2011). However, the venue rule did not change, and thus the BAPCPA exemption choice of law amendment created a bit of "disconnect": if a debtor moved to the filing state within two years of the filing, the exemptions to be applied would be the exemptions of the state where the debtor was domiciled 180 days preceding the lookback period, and not the state in which the case was filed. [4] See, *In re Fernandez*, 445 B.R. 790, 811 (Bankr. W. D. Tex. 2011) ("..with the two-year residency rule in place, the venue rule for placing the case could easily be different than the residency rule for exemption law purposes, because the time periods for venue and for exemption domicile no longer match").

### *Applying the Choice of Law Rule*

For a debtor who was domiciled in a state other than the filing state during the 180-day period or larger portion thereof preceding the lookback period, the applicable exemptions will be for a state other than the filing state. Once the domiciliary state for exemption purposes is established, that state's exemption law is reviewed. In the case of an "opt out" state, a debtor may be eligible to use that state's exemption only if the debtor is a resident of or is domiciled in that state, effectively limiting use of the

---

[4] This would be the case, unless the debtor had been domiciled in the filing state during the 180 day period or the larger portion thereof preceding the lookback period.

exemption to property within that state (e.g. the statute has no "extraterritorial" effect). Yet, a debtor meets neither the residency nor the domiciliary requirements because the debtor is now a resident of and is domiciled in the filing state and the debtor's property likewise is located in the filing state. And, the debtor cannot utilize the filing state's exemptions because the debtor has not lived in the filing state exclusively for the 730 day lookback period as required by the choice of law rule under §533(b)(3)(A). Essentially, the debtor, for exemption purposes, is a "person without a state".

### *The "Hanging Paragraph" following §522(b)(3)(C)*

Congress apparently anticipated this potential conundrum. Among the BAPCPA revisions to §522 was the addition of the "hanging paragraph" [5] which immediately follows §522(b)(3)(C):

> If the effect of the domiciliary requirement under subparagraph (A) is to render the debtor ineligible for any exemption, the debtor may elect to exempt property that is specified under subsection (d).

Thus, where the domiciliary state for exemption purposes is an "opt out" state which has an exemption statute that is not extraterritorial, the debtor may utilize the federal exemptions provided for in §522(d) by virtue of this "savings clause" found in the "hanging paragraph" which follows §522(b)(3)(C). *In re Stephens,* 402 B.R. 1, (B.A.P. 10th Cir. 2009); *Beckwith*, 448 B.R. at 761-762.

Here, the Debtor was domiciled in both Georgia, and later, Indiana, during the lookback period. Because the Debtor was domiciled in more than one state during the

---

[5] This paragraph is referred to as the "hanging paragraph" because it is formatted as a separate paragraph, yet it has no letter or number designation, much like the "hanging paragraph" which immediately follows §1325(a)(9).

lookback period, the 180-day period preceding the lookback period determines the choice of law for exemptions.  Here, that was Georgia and therefore the choice of law rule dictates that Georgia is the state whose exemption law applies.

Georgia has "opted out" of the federal exemptions, but the plain language of the Georgia exemption statute provides that the exemption has no extraterritorial effect as its use is limited to individuals domiciled in Georgia:

> (b) Pursuant to 11 U.S.C. Section 522(b)(1), an individual debtor whose domicile is in Georgia is prohibited from applying or utilizing 11 U.S.C Section 522(d) in connection with exempting property from his or her estate; and such individual debtor may exempt from property of his or her estate only such property as may be exempted from the estate pursuant to 11 U.S.C. 522(b)(2)(A) and (B). For the purposes of this subsection, an "individual debtor whose domicile is in Georgia" means an individual whose domicile has been located in Georgia for the 180 days immediately preceding the date of the filing of the bankruptcy petition or for a longer portion of such 180 day period than in any other place.

O.C.G.A. §44-13-100(b). [6]  So, applying Georgia exemption law, the Debtor cannot use Georgia exemptions, because the Debtor's domicile was not in Georgia for the 180 days (or for a longer portion of such 180 day period) immediately preceding the Petition Date.  The Debtor cannot use Indiana exemptions, because the Debtor was domiciled in Georgia and Indiana during the lookback period and was not domiciled in Indiana for the 180 days preceding the lookback period.  Thus, the Debtor can avail herself of neither the Georgia nor Indiana exemptions.  Essentially the Debtor has been rendered ineligible for any state exemption.  The "savings clause" following §522(b)(3)(C), then, allows the Debtor to use the federal exemptions under §522(d), which is precisely what

---

[6] Note that the Georgia exemption statute references "11 U.S.C. Section 522(b)(2)(A) and (B)". That section was renumbered as a result of the BAPCPA amendments and is now Section 522(b)(3)(A) and (B).

5

the Debtor did.

### *Preemption*

The Trustee apparently argues that, by extending the "lookback" period from 180 to 730 days, the BAPCPA "choice of law" amendment preempts the 180-day domiciliary requirements of the Georgia exemption statute. Since that portion of the Georgia exemption statute is preempted, the Trustee contends that the Court must ignore the domiciliary requirements and apply the Georgia exemptions. Such preemption arguments are based on the presumption that state residency and domiciliary restrictions themselves are "choice of law" provisions which conflict with the federal "choice of law" provision of §522(b)(3)(A), and thus, federal law controls. *Beckwith*, 448 B.R. at 765. This theory has gained traction with some courts. See, *In re Garrett*, 435 B.R. 434 (Bankr. S. D. Tex. 2010) (finding that §522(b)(3)(A) preempts North Carolina exemption law which limits use of exemptions to residents). *Garrett* relied, in part, upon the reasoning set for in the case of *In re Camp*, 396 B.R. 194, 198-99 (Bankr. W. D. Tex. 2008). However, that *Camp* decision was reversed by the District and Circuit Courts on the basis that Florida's opt-out statute, by its own terms, did not apply to nonresidents and therefore those nonresidents remained eligible to use the federal exemptions as nothing in the Florida law specifically prohibited them from doing so. *In re Camp*, 631 F.3d 757, 760 (5th Cir. 2011).

A majority of the courts addressing the issue have likewise rejected the preemption argument on the basis of the well established principal that property rights in bankruptcy are created and defined by state law and that Congress cannot "preempt"

6

states from the "opt out" provision it gave them in the first place. *Stephens*, 402 B.R. at 5 ("Congress was not seeking to exercise any preemption right by §522(b)(3)(A) which expressly allows states to opt out of the federal exemption system and impose their own exemptions within the bankruptcy context. In fact, it seems to have intended the opposite"); *Beckwith*, 448 at 776 ("Congress has not preempted an area wherein it has legislated when it expressly and concurrently authorizes the state legislatures to disregard or opt out of such federal legislative area...Congress did not choose to materially amend the provision authorizing the various States to opt out when it imposed the look back period on debtors, although it could have done so"); *Fernandez*, 445 B.R. at 808-809, ("In short, preemption analysis demonstrates that, if anything, section 522(b)(3)(A) does not preempt state law...the Code in many places relies on state law to supply the rule of decision and, unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently..."). Furthermore, if Congress intended to preempt "opt out" state exemption domiciliary and residency requirements, a debtor would not be barred from using those exemptions and there would always be an applicable state exemption available to a debtor and hence, no need to add the "savings clause". This Court finds the reasoning of these cases persuasive, and likewise concludes that §522(d)(3)(A)'s choice of law provision does not preempt the domiciliary requirements of the Georgia exemption statute.

## Conclusion

Having concluded that Georgia's exemption statute is not preempted, the domiciliary requirements of that statute render the Debtor ineligible to utilize Georgia's exemptions because she was not domiciled in Georgia as of the Petition Date.

7

However, nothing in the Georgia exemption statute prohibits a nonresident from using the federal exemptions available under §522(d). The Debtor may invoke the "savings clause" following §522(b)(3)(C) and use the federal exemptions under §522(d). The Debtor is allowed to claim a homestead exemption in the Residence of $21,625 pursuant to §522(d)(1). Accordingly, the Trustee's objection to that exemption is OVERRULED.

### #

Distribution:

Amanda Quick, Attorney for the Debtor
Paul Gresk, Chapter 7 Trustee